SMITH PATTEN
SPENCER SMITH, ESQ. (SBN: 236587)
DOW W. PATTEN, ESQ. (SBN:135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone (415) 402-0084
Facsimile (415) 520-0104

Attorney for Plaintiff
STEVEN INGRAM

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVEN INGRAM, an individual,

        Plaintiff,

v.

PACIFIC GAS & ELECTRIC COMPANY,
PACIFIC GAS & ELECTRIC
CORPORATION, and DOES 1-10,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.: CV 12-02777 JST-JCS**

**PLAINTIFF'S  MOTION FOR
SUMMARY ADJUDICATION OF
AFFIRMATIVE DEFENSES**

**Date:** November 7, 2013
**Time:** 2:00 p.m.
**Location:** Courtroom 9, 19th Floor, San
Francisco
**Judge**: Honorable Jon S. Tigar

**TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................1

II.     STATEMENT OF RELEVANT FACTS.........................................................1

        A.    Ingram's Employment and Discipline History.........................................1

        B.    Plaintiff's Attempts to Discover Evidence Related to Defendant's Affirmative
              Defenses..................................................................................7

III.    LAW AND ARGUEMENT.........................................................................7

        A.    Legal Standard for Summary Judgement....................................................7

              1.    Defendant's First Affirmative Defense, for Failure to State a Claim Should
                    be Dismissed..................................................................8

              2.    Defendant Has Provided No Facts to Support that Plaintiff Was
                    Comparatively Negligent.......................................................9

              3.    Defendant's Third Affirmative Defense Should Be Dismissed Because
                    Plaintiff Fully Exhausted Administrative Remedies.................................9

              4.    Defendant's Fourth Affirmative Defense Should Be Dismissed Because
                    defendant Had Knowledge Of The Alleged Discrimination, Harassment
                    And/OR Retaliation.................................................................10

              5.    Defendant Failed To Take All Reasonable Steps To Prevent
                    Discrimination, Harassment, And Retaliation And Failed To Take
                    Reasonable Care To Prevent And/OR Promptly Correct Wrongful Conduct
                    Was Exercised.......................................................................10

              6.    Plaintiff Timely Exhausted His Administrative Remedies.........................11

              7.    Defendant Cannot resent Facts that Plaintiff's Action Lacked Statutory
                    Prerequisites.........................................................................12

              8.    Plaintiff Filed the Complaint Within the Statute of Limitations................12

              9.    Labor Code §3600 is not an exclusive remedy for emotional
                    distress/mental anguish.............................................................13

i

10. Plaintiff's mental or emotional distress claims are not subject to the exclusive jurisdiction of the California Worker's Compensation Appeals Board...................................................................................................14

11. Defendant Has Not Stated Facts to Demonstrate Plaintiff's Claims are Barred by Collateral Estoppel and Res Judicata.......................................15

12. Defendant Has Not Stated Facts to how that Plaintiff's Damages Were Caused by an Entity Other than Defendant................................................16

13. Defendant Has Not Stated Facts to Demonstrate that Plaintiff Failed to Mitigate His Damages...................................................................................16

14. Plaintiff Filed the Complaint Within the Statute of Limitations of the California Code of Civil Procedure, FEHA and TITLE VII......................17

15. Defendant Has Not Provided Facts to Demonstrate that Plaintiff was Guilty of Laches and Unreasonable Delay in Bringing this Action...........18

16. Defendant Has Not Stated Fats to Support that Plaintiff's Complaint and the Claims Alleged Therein are Barred by the Doctrine of Unclean Hands.............................................................................................................18

17. Defendant Has Not Stated Facts to Support that Plaintiff's Complaint and Claims Therein Are Barred by the Doctrine of Waiver and/or Estoppel...19

18. Defendant Has Not State facts to Support that the After-Acquired Evidence Doctrine Bars Plaintiff's Recovery............................................19

19. Defendant Has Provided No Facts to Support that Plaintiff's Complaint and Claims Therein are Preempted............................................................22

20. Defendant Has Provided No Facts that Plaintiff's Complaint and the Claims Therein are Barred by an Arbitration Agreement........................23

IV.    CONCLUSION............................................................................................23

# TABLE OF AUTHORITES
## CASES

*Accardi v. Superior Court,*

17 Cal. App. 4th 341, 21 Cal. Rptr. 2D 292 (1993)...................................................... 14

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program,*

718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010)........................................................... 8

*Biller v. Toyota Motor Corp.,*

668 F.3d 655, 668 (9th Cir. Cal. 2012)..................................................................... 18

*Camp v. Jeffer, Mangels, Butler & Marmaro,*

35 Cal. App. 4th 620, 632, 41 Cal. Rptr. 2D 329 (1995).......................................... 20

*Celotex Corp v. Cattrett,*
477 U.S. 317, 323 (1986).......................................................................................... 7, 8

*Cole v. Fair Oaks Fire Protection District,*
43 Cal. 3D 148, 160 (1987)...................................................................................... 15

*Cramer v. Consol. Freightways, Inc.,*
255 F.3d 683, 689 (9th Cir. 2001)............................................................................ 22

*Dean v. Jet Services West, Inc.,*
782 F. Supp. 498, 501 (S.D. Cal. 1991).................................................................... 14

*Flav-O-Rich v. Rawson Food Service, Inc.,*
846 F.2d 1343, 1349 (11th Cir. 1988)...................................................................... 8

*Fretland v. County of Humboldt,*
69 Cal. App. 4th 1478, 1491-92, 82 Cal. Rptr. 2D 359 (1999)................................. 14

iii

*Galen v. Cnty. of L.A.*,
477 F.3d 652, 658 (9th Cir. 2007).................................................................................... 7, 8

*Gantt v. Sentry Ins.*,
824 P.2d 680, 681-82, 692, 1 Cal. 4th 1083 (Cal. 1992).......................................... 13

*Green v. Los Angeles County Superintendent of Schools*,
883 F.2d 1472, 1476 (9th Cir. 1989)................................................................................ 12

*In re Beaty*,
306 F.3d 914, 926-27 (9th Cir. 2002)............................................................................. 18

*Jaramillo v. County of Orange*,
200 Cal.App.4th 811, 820, 133 Cal. Rptr. 3D 751 (2011)..................................... 18

*Jarrow Formulas*,
304 F.3d at 838................................................................................................................... 18

*Joe Hand Promotions, Inc. v. Estrada*,
2011 U.S. Dist. LEXIS 61010, at *5 (E.D. Cal. June 8, 2011)................................. 8

*Kendall-Jackson Winery, Ltd. v. Superior Court*,
76 Cal.App.4th 970, 978, 90 Cal. Rptr. 2D 743 (1999)................................... 18, 19

*Maynard v. City of San Jose*,
37 F.3d 1396, 1405 (9th Cir. Cal. 1994)....................................................................... 13

*Montana v. United States*,
440 U.S. 147, 153 (U.S. 1979)......................................................................................... 15

*Murillo v. Rite Stuff Foods, Inc.*,
65 Cal. App. 4Th 833, 845-46 (1998)........................................................................... 20

*Robards v. Gaylord Brothers, Inc.*,
854 F.2d 1152 (9th Cir. 1988).........................................................................................14

*Smolen v. Deloitte, Haskins & Sells*,
921 F.2d 959, 963 (9th Cir. 1990).................................................................................... 8

*Stiefel v. Bechtel Corp.*,
624 F.3d 1240, 1244 (9th Cir. 2010) ............................................................... 12

*Tameny v. Atlantic Richfield Co.*
(1980) 27 Cal.3d 167; *Foley v. Interactive Data Corp.* (1988) ..................... 13

*Taylor v. Beth Eden Baptist Church*,
294 F. Supp. 2d 1074, 1080 (N.D. Cal. 2003) ...................................... 13, 14

*Waag v. Thomas Pontiac Buick, GMC, Inc.*,

*930 F. Supp. 393, 408 (D. Minn. 1996)* ......................................................... 20

*Yanowitz v. L'Oreal USA, Inc.*,
106 Cal. App. 4th 1036, 131 Cal. Rptr. 2D 575 (2003) ........................... 13, 14

*Zivkovic v. S. Cal. Edison Co.*,

302 F.3d 1080, 1088 (9th Cir. Cal. 2002) .................................................. 8

## FEDERAL STATUTES

Federal Rule of Civil Procedure 56(a) ............................................................ 7

Labor Code § 3600 ........................................................................................ 13

California Code of Civil Procedure §§ 338, 340, 343 ................................... 17

29 U.S.C. § 185 ........................................................................................ 22, 23

v

Plaintiff Steven Ingram ("Plaintiff" or "Ingram"), through his counsel of record herein, moves the court for an order granting Plaintiff's Motion for Summary Adjudication of Affirmative Defenses because, based on the discovery produced by Defendant PG&E ("Defendant" or "PG&E") to date, there is no genuine issue of material fact with respect to several of the affirmative defenses asserted in the Answer in this matter. This Motion is based on this Motion, the Declaration of Dow W. Patten in Support, the Proposed Order, the Court's record in this matter, and the argument of counsel.

The relief requested by this motion is an order of dismissal with prejudice of Defendant's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fifteenth, Sixteenth, Eighteenth, Nineteenth, Twentieth, Twenty-Third, Twenty-Eighth and Twenty-Ninth Affirmative Defenses.

## I.    INTRODUCTION

Ingram brings this Motion for Summary Adjudication to narrow the issues for trial, as there is no genuine issue of material fact as to several of Defendant's affirmative defenses. (Dkt # 4.) Defendant asserts several defenses which, based upon discovery provided by Defendant to date, there is no evidence to support. For the reasons set forth below, there is no evidence to support Defendant's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fifteenth, Sixteenth, Eighteenth, Nineteenth, Twentieth, Twenty-Third, Twenty-Eighth and Twenty-Ninth Affirmative Defenses. (*Id.*)

## II.    STATEMENT OF RELEVANT FACTS

### A.    Ingram's Employment and Discipline History

On or about April 15, 2003, Plaintiff began working for Defendant PG&E as a Utility Worker in General Construction at the Construction Station in San Mateo, California. (Dkt # 69, Patten Decl., ¶ 80, Ex "Z", Dkt # 90,  DEF000093) Over the next 8 years Plaintiff would only

have 3 performance errors, despite the high rate of malfunctioning of old and outdated equipment. [1]  For Plaintiff's first five years of employment he was never disciplined.  In 2008, Plaintiff began to report to Boris Gankin and Ed Bonnett.  Plaintiff testified that Gankin was often inappropriate and condescending to minority employees. (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo., 49:16-51:4)   Plaintiff believed that Gankin harbored racial bias towards African Americans because of his condescending attitude towards minorities and "the fact that all the other African Americans in the shop were either on DML, or under some form of disciplinary action, or terminated." (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo.,  53:18-54:8)  During the time he reported to Gankin, Plaintiff witnessed Gankin "go above and beyond to give you the most severe disciplinary action that you could possibly get with African Americans." (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo., 54:20-23)

On March 4, 2009, Steve Watson recognized Plaintiff's good work performance. Specifically, for the month of February 2009, Plaintiff completed 9 Station Inspections without an error or mistake and Watson rewarded Plaintiff with a $25.00 Reward and Recognition for doing such a good job. Watson went on to thank Plaintiff for the outstanding performance. (Dkt # 69,  Patten Decl., ¶ 80, Ex "Z", Dkt # 90, DEF000028)[2]

---

1   For the past year Ingram has been employed as a high voltage electrician at Moffet Field with IAP World Services, which is a government contractor that provides logistical services for military bases and other government projects around the world. (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo. 19:24-20:13)

2   This is the only performance evaluation Plaintiff received while working at Martin Substation. Bonnett testified that performance evaluations were not issued on an annual basis, and are only given by supervisors to their employees as they feel appropriate. (Dkt # 69,  Patten Decl., ¶ 79, Ex "Y", Dkt # 69-4, Bonnett Depo, 67:12-18) Gankin testified that he could not answer questions about Ingram's performance without his file in front of him, which Defendant did not produce until the end of the first day of deposition of Mr. Gankin. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo., 61:1-8)  Ingram scored at 92% on the Substation Switching courses in 2010 and received the highest score a perfect 100% on the Substation Switching courses in 2011.

From 2008 until his termination Plaintiff was disciplined eleven times: six times for driving infractions, three times for performance errors, one time for insubordination and one time for attendance. Mr. Bonnett testified Plaintiff was involved in a motor vehicle accident in 2011 while stopping to get lunch.[3] (Dkt # 69, Patten Decl., ¶ 79, Ex "Y", Dkt # 69-4, Bonnett Depo 68:24-71:4) Following the accident, Defendant interviewed Plaintiff as part of the investigation to see which party was at fault. Upon investigation, it was discovered that the party at fault was the third party who hit Plaintiff. (Dkt # 69, Patten Decl., ¶ 79, Ex "Y", Dkt # 69-4, Bonnett Depo 70:21-71:14) Bonnett testified he could not recall if anyone confirmed or denied that Plaintiff had a valid license, nor whether he exchanged information with the third party following the incident. (Dkt # 69, Patten Decl., ¶ 79, Ex "Y", Dkt # 69-4, Bonnett Depo 75:5-18) Both times that Plaintiff was involved in a motor vehicle accidents in 2008 and 2010, Plaintiff was required to provide of copy of his driver's license to PG&E as part of the positive discipline process and no one at PG&E informed Plaintiff of any issues with his license at that time. (Dkt # 68, Ingram Decl.¶ 4)

In April 24, 2011, Plaintiff was arrested on suspicion of driving under the influence. On May 10, 2011 Mr. Gankin conducted a driving observation with Plaintiff. (Dkt # 69, Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo 245:23-246:8) Mr. Gankin claims prior to May 10, 2011 that he was unaware of any issues with Plaintiff's driver's license. (Dkt # 69, Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo 248:25-249:12) Ingram testified that prior to his termination he wasn't aware of any restrictions on his license. (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo 142:7-11)

Gankin testified that once he became aware of an issue with Ingram's license he told Ingram that he could not drive company vehicles until he could show Gankin his driver's license.

---

3  Company documents demonstrate this incident occurred on February 18, 2010. (Dkt # 69, Patten Decl., ¶ 80, Ex "Z", Dkt # 90, DEF0002)

MOTION FOR SUMMARY ADJUDICATION                                    CV 12-02777 JST-JCS

(Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3,  Gankin Depo 85:25-86:9) Gankin testified

that he told Ingram that he could find Ingram an assignment for that day that did not require a

license and Ingram could bring his license the next day. *Id.*   Gankin testified that Ingram did

environmental cleanup at Martin substation or was at the office that day instead of driving. (Dkt

# 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depp 86:10-13)  Gankin testified that for

the remainder of May, Ingram did other assignments including: safety observation, and

functional test at Martin. Functional testing did not not require Ingram to operate a PG&E

vehicle. (Plaintiff Depo.  90:2-14)

On May 17, 2011, Ingram put a copy of his license in Gankin's mailbox.  (Dkt # 69,

Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo.  296:11-15) On May 17, 2011 Plaintiff

was training a fellow PG&E employee, Mike Rice, on how to do a routine switch on old

outdated equipment when he committed a error resulting in the old equipment to malfunction.

Plaintiff testified that Rice was accompanying him as a provisional electrician  and Rice worked

closely with him to watch him while he performed a switching duty, which Plaintiff found odd

since he was unfamiliar with such a practice.  (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-

3, Plaintiff Depo 180:19-21, 181:1-12)  Gankin testified that Rice was assigned to work with

Ingram to observe the process of performing a functional test and drive Ingram to the location of

the functional test.[4] (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo 180:18-

---

4  Gankin testified that a functional test is operating the circuit breaker, minimum three times, making sure its open and closed properly and it would need to be performed because it is a maintenance procedure making sure the equipment is reliable. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin 196:17-23)   If a breaker opens, it results in the circuit causing an outage. (*Id.* 205:18-25) It is possible for a circuit breaker to open and there would be no outage to customers. ( *Id.* 206:1-3) Gankin testified that if there's a functional test, a circuit breaker can open and could result in no outage. (*Id.* Gankin 206:24-207:2) Gankin testified that when the breaker is de-energized and isolated from the electrical system, a breaker can open without it resulting in an outage. (*Id.* Gankin 207:6-12) Gankin testified that he does not know if anyone at PG&E can confirm whether or not any customers lost power as a result of Ingram work performance error. (*Id.* Gankin 208:1-4)

4

181:1) Gankin testified that he assigned Rice to observe Ingram because Ingram was a qualified

substation maintenance electrician who can perform this functional test and Rice was a

provisional electrician who can get knowledge from observing Ingram (Dkt # 69,  Patten Decl., ¶

78, Ex "X", Dkt # 69-3, Gankin Depo 182:25-183:8)

     Plaintiff testified that he never performed the switch on that particular circuit at that

station before. (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo 182:11-19)

Plaintiff testified that the switch he was assigned to work on was a 60-year-old breaker that is

poorly documented and maintained. (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3,

Plaintiff Depo. 282:4-12, 15-16, 18-25; 283:1-10)  During the investigation into Plaintiff's

switching error, it was discovered that operation #70, performed during the functional test, was

missed in the switching log. (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo

197:25-198:5)  Plaintiff testified that Step 70 is done after the completion functional performance

test and the functional performance test was to be performed after Step 63. (Dkt # 69, Patten

Decl., ¶ 77, Exh. "W", Dkt # 69-3, Plaintiff Depo. 282:4-12, 15-16, 18-25; 283:1-10)  Plaintiff

testified that he and Rice were set to bring the circuit breaker back in service, but it didn't fully

close. *Id.*  Plaintiff testified that the old equipment malfunctioned a bit and threw them off,

causing their delay.  *Id.*  Rather than work unapproved overtime on the issue, for which Gankin

had terminated Plaintiff's  African-American co-worker Louis Tinsley,  Plaintiff attempted to

immediately fix the issue.[5]  At the time of Ingram's performance error Ingram did not have an

---

5 Plaintiff testified that it was a conflicting kind of deal whether he was told that he had to stop in
the middle of a procedure like a switch if it could not be completed without overtime hours.
Plaintiff testified that past issues arose regarding creating one's own overtime hours.  Plaintiff
testified that one day, two African-American electricians from his department were switching
when a problem occurred, and they stayed on a couple extra hours.  Plaintiff testified that the
employees thought what they did what was right.  Plaintiff testified that the DO had even told
them to stay, but they were written anyway because they had not contacted Ed or Boris, even
though they had tried to call Boris, but it was a weekend and he didn't answer his phone.
Plaintiff testified that with this mind, he thought he had to get finish the job without requesting
overtime, or else he would be written up. (Dkt # 69, Patten Decl., ¶ 77, Exh. "W", Dkt # 69-3,
Plaintiff Depo. 280:3-9, 280:10-12, 15-25; 281:1-25-282:1-2)

MOTION FOR SUMMARY ADJUDICATION                                    CV 12-02777 JST-JCS

active coaching and counseling. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin 88:24-189:17)

On May 18, 2011 Diane Harris, PG&E's Human Resources advisor, wrote an e-mail to Boris Gankin and Ed Bonnett providing them with Plaintiff's online drivers record stating, "Looks like your boy hasn't had a license in a while....d". (Dkt # 69,  Patten Decl., ¶ 80, Ex "Z", Dkt # 90, DEF000186-DEF000187)  On May 19, 2011 Mr. Gankin placed Plaintiff on "Crisis suspension"  due to unavailability of his driver's license. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo 253:6-18; DEF173-DEF174, Patten Decl., Ex "Z")  On May 19, 2011 Gankin sent an email an unidentified person stating, "By the way, Steve said that this is a discrimination."  (Dkt # 69,  Patten Decl., ¶ 80, Ex "Z", Dkt # 90, DEF 000486)

On May 21, 2011, Mr. Gankin sent an e-mail to his superintendent, Michael Lewis, informing him of his alleged discovery that Plaintiff did not have a valid driver's license during his driving observation on May 10th. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo 243:18-245:3) Mr. Gankin was responsible for interviewing Plaintiff during his investigation regarding his driver's license. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo 269:19-24)  During the investigation into Plaintiff's driver's license, when asked who he notified of the change in status of his license, Plaintiff responded that he was not aware of any changes to his driver's license. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo 272:12-18)

On June 29, 2011 Plaintiff was terminated for failing to previously notify Defendant that he had lost his driver's license and for a switching error. (Dkt # 69,  Patten Decl., ¶ 79, Ex "X", Dkt # 69-4, Bonnett Depo 14:22-15:4) Plaintiff claims that other employees were given lesser disciplines for the same alleged misconduct, and proof of that lesser discipline has been obstructed by Defendant's refusal to provide substantive responses to Plaintiff's discovery

MOTION FOR SUMMARY ADJUDICATION                                    CV 12-02777 JST-JCS

requests.  (Dkt#91, Exhibits "A"-"G"; Dkt #69, Exhibits "A"-"L"; Declaration of Dow W. Patten "Patten Decl.", ¶4, Exhibit "D").

Mr. Gankin does recall having one other previous discussions with Mr. Bonnett regarding placing an employee on crisis suspension. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3, Gankin Depo 258:1-7)

### B.    Plaintiff's Attempts to Discover Evidence Related to Defendant's Affirmative Defenses

Plaintiff's discovery requests have sought information on the policy infractions at PG&E which would result in discipline.  (Dkt # 69,  Patten Decl., ¶¶ 2-73; Patten Decl., ¶4, Exh. "D"), Plaintiff sought company-known infractions on which the company took no action. *Id.*  Plaintiff also sought information on the discipline which was imposed and the levels of discipline that were imposed. *Id.*  At each turn, Defendant has provided evasive responses, and despite being Ordered (Dkt#71) to identify all individuals whose names are redacted by race to permit the correlation of the summaries of discipline, and answer questions based upon those identifications, Defendant has refused to do so.  (Dkt #91 Patten Supplemental Decl. , Exh. "A" - "G").

## III.    LAW AND ARGUMENT

### A.    Legal Standard for Summary Judgment

 "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Material facts are those that may affect the outcome of the case. The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp v. Cattrett*, 477 U.S.

317, 323 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party

bears the initial burden of showing there is no genuine issue of material fact and that he or she is

entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or

her burden, the non-moving party  must make a showing sufficient to establish a genuine issue

for trial. *Galen*, 477 F.3d at 658.

     To show the existence of a genuine issue, the nonmoving party must produce at least

some significant probative evidence tending to support the complaint, or in this instance the

affirmative defense(s).  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

The nonmoving party, in this case defendant, cannot rely on unsupported allegations to overcome

a motion for summary judgment. If the nonmoving party fails to make this showing, "the moving

party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

    As set forth below, Defendant has provided no evidentiary support for several of its

affirmative defenses. Defendant has alleged a number of affirmative defenses, including failure

to mitigate damages, which it has the burden of proof which it cannot meet.

### *1.    Defendant's First Affirmative Defense, for Failure to State a Claim Should be Dismissed*

    A defense which demonstrates that plaintiff has not met its burden of proof is not an

affirmative defense. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. Cal. 2002)*; see

also Flav-O-Rich v. Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988)

(recognizing that a defense which points out a defect in the plaintiff's *prima facie* case is not an

affirmative defense). Furthermore, district courts in this circuit have held that "[f]ailure to state a

claim is an assertion of a defect in Plaintiff's prima facie case, not an affirmative defense."*Joe

Hand Promotions, Inc. v. Estrada*, 2011 U.S. Dist. LEXIS 61010, at *5 (E.D. Cal. June 8, 2011);

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D.

Cal. 2010) (striking "affirmative defenses" that "simply provide a basis to negate an element of

8

[the plaintiff's] prima facie case for relief"; finding such "affirmative defenses" are "merely rebuttal against the evidence [to be] presented by the plaintiff")  Accordingly, the Court should dismiss Defendant's First Affirmative Defense with prejudice.

> **2.    *Defendant Has Provided No Facts to Support that Plaintiff Was Comparatively Negligent Nor Is Comparative Negligence A Defense to Any of the Claims.***

Defendant alleges as its Second Affirmative Defense that "any damages sustained by Plaintiff were either wholly or in part negligently caused by Plaintiff's own actions, inactions, or delay in acting, and said negligence comparatively reduces the percentage of negligence, if any, by Defendant." (Dkt # 4, ¶ 84.) Plaintiff has not plead a claim for negligence; therefore, it is unclear what the grounds for this affirmative defense are and which claim is it alleged against.

Furthermore, Defendant has not presented any documents or testimony to support its affirmative defense that Plaintiff was comparatively negligent.  Therefore, there is no genuine issue of material fact as to Defendant's Second Affirmative Defense and the Court should dismiss this affirmative defense with prejudice.

> **3.    *Defendant's Third Affirmative Defense Should Be Dismissed Because Plaintiff Fully Exhausted Administrative Remedies.***

Plaintiff fully exhausted all of his administrative remedies with the California Department of Fair Employment and Housing ("DFEH").  Plaintiff's Complaint alleges race discrimination in violation of Title VII and harassment and retaliation in violation of both Title VII and the California Fair Employment and Housing Act ("FEHA"). (Dkt # 1.) Plaintiff received a right-to-sue notice from the EEOC on June 5, 2012 and received a right-to-sue notice from the DFEH on April 2, 2012. (Patten Decl., Exh. "A".) Both charges include claims for race discrimination and harassment as well as for retaliation for engaging in protected activity. (*Id*.) Accordingly, Plaintiff fully exhausted his administrative remedies as to the claims alleged against Defendant PG&E. Therefore, there is no genuine issue of material fact with respect to Defendant's Third

MOTION FOR SUMMARY ADJUDICATION                                    CV 12-02777 JST-JCS

1    Affirmative Defense and the Court should dismiss Defendant's Third Affirmative Defense with

2    prejudice.

3        **4.    Defendant's Fourth Affirmative Defense Should Be Dismissed Because
             Defendant Had Knowledge Of The Alleged Discrimination,**
4            **Harassment And/Or Retaliation.**

5            Defendant alleges that it had "no knowledge of any alleged discrimination, harassment

6    and/or retaliation." (Dkt # 4, ¶ 86.) Defendant cannot dispute that this statement is false. Despite

7    Defendant's attempts to claim that it lacked any knowledge of any wrongdoing, what has been

8    borne out in discovery is in fact the opposite. Specifically, Plaintiff informed his supervisor,

9    Gankin, on or prior to May 19, 2011, that the investigation into his license was "discrimination."

10   (Dkt# 90, page 13, DEF000486.) Defendant falsely asserts that Gankin was unaware of any

11   complaints of discrimination or harassment made by Plaintiff. (Dkt # 48, Def. MSJ, p. 22:13-14,

12   Gankin Decl. at ¶ 44.) Based upon the documentary evidence in this matter it is undisputed that

13   Gankin, the decision maker, knew of Plaintiff's complaint of discrimination, informed at least one

14   unidentified person of Plaintiff's complaint of discrimination and within forty-one (41) days

15   Plaintiff's employment was terminated. (Dkt# 90, page 13, DEF000486, DEF000005.) Plaintiff's

16   retaliation claim rests upon his complaint of discrimination to Gankin and his subsequent

17   termination. Accordingly, it is undisputed that Defendant had knowledge of the alleged

18   discrimination, harassment and/or retaliation.  Defendant has not presented any documents or

19   testimony to support its affirmative defense that Defendant had no knowledge of any alleged

20   discrimination, harassment and/or retaliation.  Therefore, there is no genuine issue of material

21   fact as to Defendant's Fourth Affirmative Defense and the Court should dismiss this affirmative

22   defense with prejudice.

23

24       **5.    Defendant Failed To Take All Reasonable Steps To Prevent
             Discrimination, Harassment, And Retaliation And Failed To Take**
25           **Reasonable Care To Prevent And/Or Promptly Correct Wrongful**
             **Conduct Was Exercised.**
26

27

28

MOTION FOR SUMMARY ADJUDICATION                           CV 12-02777 JST-JCS

Defendant alleges that it took reasonable care to prevent and/or promptly correct the alleged wrongful conduct was exercised. (Dkt # 4, ¶ 100.) However, the evidence borne out in discovery in this matter shows no investigation of any kind into Plaintiff's claim of discrimination, let alone any steps to correct or remedy the discriminatory and harassing conduct of defendant, it did the opposite by terminating Plaintiff's employment. Specifically, Plaintiff informed his supervisor, Gankin, on or prior to May 19, 2011, that the investigation into his license was "discrimination." (Dkt # 69,  Patten Decl., ¶ 80, Ex "Z", Dkt # 90, DEF000486.)  Based upon the documentary evidence in this matter it is undisputed that Gankin, the decision maker, knew of Plaintiff's complaint of discrimination, informed at least one unidentified person of Plaintiff's complaint of discrimination and within forty-one (41) days Plaintiff's employment was terminated. (Dkt # 69,  Patten Decl., ¶ 80, Ex "Z", Dkt # 90, DEF000486, DEF000005.)  Furthermore, as evidenced by Defendant's assertion in its Motion for Summary Judgment, rather than take steps to remedy, prevent or promptly correct the wrongful conduct which Plaintiff complained, it falsely denies even knowing about the conduct as Defendant falsely asserted that Gankin was unaware of any complaints of discrimination or harassment made by Plaintiff. (Dkt # 48, Def. MSJ, p. 22:13-14, Gankin Decl. at ¶ 44.)   If Defendant took no steps to investigate, the claim, it cannot be heard to make a bald claim that it prevented or remedied the unlawful conduct.  Accordingly,  the Court should dismiss Defendant's Fifth and Eighteenth Affirmative defenses with prejudice.

### 6.    *Plaintiff Timely Exhausted His Administrative Remedies.*

Defendant alleges as its Sixth Affirmative Defense that Plaintiff did not file a timely charge filed with the California Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission. (Dkt # 4, ¶ 88.) Plaintiff was timely in all aspects of exhausting his administrative remedies for PG&E.  Plaintiff's Complaint alleges race discrimination in violation of Title VII and harassment and retaliation in violation of both Title VII and the California Fair Employment and Housing Act ("FEHA"). (Dkt # 1.) As detailed

MOTION FOR SUMMARY ADJUDICATION                    CV 12-02777 JST-JCS

1  above, Plaintiff was terminated on June 29, 2011. On April 2, 2012, approximately 278 days after

2  the final incident of discrimination, Plaintiff filed a charge of discrimination with the DFEH

3  (Patten Decl., ¶2, Exhibit "A").

4      The DFEH and Equal Employment Opportunity Commission have a Worksharing

5  Agreement which was in effect at the time that Plaintiff filed his DFEH charge. Under such an

6  agreement, a charge filed with the DFEH "is deemed to have been received by the EEOC on the

7  same day." *Stiefel v. Bechtel Corp*., 624 F.3d 1240, 1244 (9th Cir. 2010); *see also Green v. Los*

8  *Angeles County Superintendent of Schools*, 883 F.2d 1472, 1476 (9th Cir. 1989).  Accordingly,

9  there is no genuine issue of material fact as Plaintiff timely filed with both the EEOC and DFEH

10 for his claims of race discrimination, harassment and retaliation. Therefore, the Court should

11 dismiss Defendant's Sixth Affirmative Defense with prejudice.

12

13      **7.    *Defendant Cannot Present Facts that Plaintiff's Action Lacked***

14            ***Statutory Prerequisites.***

15      Defendant alleges as its Seventh Affirmative Defense that "this action cannot be

16 maintained because statutory prerequisites have not been fulfilled." (Dkt # 4, ¶ 89.) Defendant

17 fails to specify which statutory prerequisites Plaintiff allegedly failed to fulfill. As detailed

18 above, in sections III.A.3 and III.A.6 of this motion, Plaintiff exhausted all required

19 administrative remedies under Title VII and FEHA in a timely fashion.

20

21      Furthermore, Defendant has not presented any documents or testimony to support its

22 affirmative defense that statutory prerequisites have not been fulfilled for Plaintiff's action.

23 Therefore, Defendant's  Seventh Affirmative Defense should be dismissed with prejudice.

24      **8.    *Plaintiff Filed the Complaint Within the Statute of Limitations.***

25      Defendant alleges as its Eighth Affirmative Defense that Plaintiff failed to timely file his

26 complaint within the limits provided by statute from the time of issuance of a notice informing

27 Plaintiff of his right to institute a civil action. (Dkt # 4, ¶ 90.)  As set forth above, in section

28

MOTION FOR SUMMARY ADJUDICATION                          CV 12-02777 JST-JCS

III.A.6, Plaintiff timely filed charges with the DFEH and EEOC with respect to Plaintiff's claims of race discrimination in violation of Title VII and harassment and retaliation in violation of Title VII and FEHA. (*See* section III.A.6 above.) With respect to Plaintiff's wrongful termination in violation of public policy, a plaintiff must prove either that the termination violated the FEHA or other statute, or that the existence of a "common law" (non-statutory) cause of action as wrongful termination in violation of public policy (*see, generally, Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167; *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654. As set forth in the operative Complaint, Plaintiff's wrongful termination claim is based upon Defendant's violations of Title VII and FEHA.

Accordingly, Plaintiff there is no genuine issue of material fact concerning whether or not Plaintiff filed his suit within the limitation prescribed by the DFEH and EEOC. Therefore, the Court should dismiss Defendant's Eighth Affirmative Defense with prejudice.

### 9.    *Labor Code § 3600 Is Not An Exclusive Remedy For Emotional Distress/Mental Anguish.*

Defendant asserts as its Ninth Affirmative Defense that Plaintiff's emotional distress or mental anguish is "barred by the exclusive remedy provided by Labor Code § 3600 *et seq*, if applicable." As an initial matter, Plaintiff has not alleged a separate claim for intentional infliction of emotional distress. Therefore, Defendant's affirmative defense is alleged as to Plaintiff's damages only.

Labor Code § 3600 *et seq.* is not applicable in this action. Personal injury claims, such as emotional distress and mental anguish, that implicate fundamental public policy considerations are not preempted by the Workers' Compensation Act. *Gantt v. Sentry Ins.*, 824 P.2d 680, 681-82, 692, 1 Cal. 4th 1083 (Cal. 1992); *Maynard v. City of San Jose*, 37 F.3d 1396, 1405 (9th Cir. Cal. 1994). Courts have found that emotional injuries arising from discrimination and harassment are by nature outside the scope of the employment relationship and thus are not precluded by the

MOTION FOR SUMMARY ADJUDICATION                                    CV 12-02777 JST-JCS

exclusive remedy provisions of the Workers' Compensation Act. *Taylor v. Beth Eden Baptist Church*, 294 F. Supp. 2d 1074, 1080 (N.D. Cal. 2003) citing *Yanowitz v. L'Oreal USA, Inc.*, 106 Cal. App. 4th 1036, 131 Cal. Rptr. 2d 575 (2003)(holding that exclusivity did not apply to claim for negligent infliction of emotional distress against employer based on allegation that employer had retaliated against plaintiff for refusing to fire female sales associate who plaintiff's supervisor thought was unattractive); *Fretland v. County of Humboldt*, 69 Cal. App. 4th 1478, 1491-92, 82 Cal. Rptr. 2d 359 (1999)(holding that work-related injury discrimination is not a normal risk of the compensation bargain and therefore, claims for negligent and intentional infliction of emotional distress against employer were not barred by exclusivity rule); *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 21 Cal. Rptr. 2d 292 (1993)(holding that claim for intentional infliction of emotional distress against employer based on alleged harassment was not barred by the exclusivity rule because sexual harassment was "outside the normal employment environment"))  This same rationale should be extended to Plaintiff's Title VII claims.

Therefore, the Court should dismiss Defendant's Affirmative Defense No. 9 with prejudice.

### 10.    *Plaintiff's Mental or Emotional Distress Claims Are Not Subject to the Exclusive Jurisdiction of the California Worker's Compensation Appeals Board.*

Defendant alleges that Plaintiff's claims for mental or emotional distress are subject to the exclusive jurisdiction of the California Worker's Compensation Appeals Board pursuant to Labor Code § 3200, *et seq*. Defendants' conclusory argument that all termination injuries fall under worker's compensation is not convincing. The Ninth Circuit has held that allegations of emotional distress such as embarrassment, humiliation, and anguish do not allege  injuries within the jurisdiction of worker's compensation unless they are incident to a physical injury which is not present here. *Dean v. Jet Services West, Inc.,* 782 F. Supp. 498, 501 (S.D. Cal. 1991) (citing *Robards v. Gaylord Brothers, Inc.*, 854 F.2d 1152 (9th Cir. 1988)). Furthermore, while the Ninth

Circuit has held that California's worker compensation law bars claims for intentional infliction of emotional distress, it is only if those injuries resulted in physical injury.

> The basis of compensation and the exclusive remedy provisions is an injury sustained and arising out of the course of employment . . ., ***and when the essence of the wrong is personal physical injury or death***, the action is barred by the exclusiveness clause no matter what its name or technical form if the usual conditions of coverage are satisfied.

*Cole v. Fair Oaks Fire Protection District*, 43 Cal. 3D 148, 160 (1987) (emphasis added). The decision in *Cole* treats as continuing viable authority, prior decisions holding that emotional distress, without physical injury, is not compensable under worker's compensation. *Id*. at 155. Accordingly, since Plaintiff's claims for emotional distress are claims for general emotional distress damages and not a separate cause of action which is linked to any physical injury sustained while employed by Defendant PG&E, the Court should dismiss Defendant's Affirmative Defense No. 10 with prejudice.

### 11. *Defendant Has Not Stated Facts to Demonstrate Plaintiff's Claims are Barred by Collateral Estoppel and Res Judicata.*

The doctrine of *res judicata* provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. The application of this doctrine is 'central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction. Moreover, a rule precluding parties from the contestation of matters already fully and fairly litigated 'conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. Under the doctrine of collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153 (U.S. 1979)

MOTION FOR SUMMARY ADJUDICATION                    CV 12-02777 JST-JCS

Defendant has not presented any documents or testimony to support its affirmative defense that Plaintiff's claims are barred by principles of collateral estoppel and *res judicata*. Specifically, Defendant has not presented any evidence which evidences that any of Plaintiff's claims were previously fully and fairly litigated before a court of competent jurisdiction as none exist. Therefore, The Court should dismiss Defendant's Affirmative Defense No. 11 with prejudice.

### 12.    *Defendant Has Not Stated Facts to Show that Plaintiff's Damages Were Caused by an Entity Other than Defendant.*

As set forth in the facts above, all damages alleged by Plaintiff in this matter were the result of Defendant's discriminatory, harassing and retaliatory conduct. Defendant has not presented any documents or testimony to support its affirmative defense that Plaintiff's damages were caused by persons, firms, corporations, entities, or organizations other than Defendant. Therefore, there is no genuine issue of material fact as to the Defendant's Twelfth Affirmative Defense and the Court should dismiss this affirmative defense with prejudice.

### 13.    *Defendant Has Not Stated Facts to Demonstrate that Plaintiff Failed to Mitigate His Damages.*

Defendant alleges that "Plaintiff failed to mitigate his alleged damages and said failure to mitigate bars Plaintiff from recovery in this action." (Dkt # 4, ¶ 95.) However, evidence borne out in discovery evidences that Plaintiff fully mitigated his damages following the termination of his employment with PG&E. Specifically, Defendant's "Special" Interrogatory No. 21 sought to identify by name, address, telephone number, and dates of employment, each and every employer Plaintiff has had since April 1, 2003. Plaintiff responded, in relevant part, as follows, "NASA Ames Research, Moffett Field, CA 94035, (650) 604-5000, December 2011-present." (Patten Decl., Exh. "B".)  Furthermore, when asked during his deposition which steps he took to find employment after his termination from PG&E, Plaintiff testified that he looked for work at other utilities including, but not limited to, the Sacramento Municipal Utility District, Bart, and

Southern California Edison. (Patten Decl., Exh. "C", Ingram Depo. 24:1-25.) Plaintiff further testified that he currently works for IAP World Services at Moffett Field as a high-voltage electrician, is making $39 an hour and the benefits he receives from IAP is similar to those he received while working at PG&E. (Patten Decl., Exh. "C", Ingram Depo. 19:22-23:25.)

Defendant has not presented any documents or testimony to support its affirmative defense that Plaintiff failed to mitigate his damages in fact the opposite it true as discovery has borne out that Plaintiff fulfilled his duty to mitigate through obtaining comparable work within six months of his employment termination. Therefore, there is no genuine issue of material fact as to Plaintiff's mitigation in this matter and the Court should dismiss with prejudice Defendant's Thirteenth Affirmative Defense with prejudice.

### 14.  *Plaintiff Filed the Complaint Within the Statute of Limitations of the California Code of Civil Procedure, FEHA, and Title VII.*

Defendant alleges that the complaint and each cause of action alleged therein are barred by the statutes of limitations, including but not limited to, those set forth in the provisions of California Code of Civil Procedure §§ 338, 340, 343, and the applicable sections of the California Fair Employment and Housing Act and Title VII. As detailed about, in section 6, Plaintiff timely filed with the DFEH and EEOC with respect to his race discrimination, harassment and retaliation claims under FEHA and Title VII. Furthermore, the Complaint was filed approximately eleven months after Plaintiff's termination, within the statute of limitations prescribed by the California Code of Civil Procedure section 338 (3 year statute of limitation), section 340 (1 year statute of limitation) and section 343 (4 year statute of limitation). Cal. Code. Civ. P. §§ 338, 340, 343. Accordingly, there is no genuine issue of material fact as to Defendant's Fifteenth Affirmative Defense and the Court should dismiss this affirmative defense with prejudice.

### 15. *Defendant Has Not Provided Facts to Demonstrate that Plaintiff was Guilty of Laches and Unreasonable Delay in Bringing this Action.*

Laches is an equitable affirmative defense available for actions that do not have a specific applicable statute of limitations. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). "The affirmative defense of laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *In re Beaty*, 306 F.3d 914, 926-27 (9th Cir. 2002); *see also Jarrow Formulas*, 304 F.3d at 838. There must be "particularized evidence to support [the]assertion that the time lag between knowledge of the potential action and the filing of the action was unreasonable in length. Mere delay alone will not establish laches . . . ." *In re Beaty*, 306 F.3d at 927.

As set forth above, Plaintiff's claims have applicable statutes of limitations and Plaintiff timely filed with these administrations and with the Court. Moreover, Defendant has not presented any documents or testimony to support its affirmative defense that Plaintiff was guilty of laches and unreasonable delay in bringing this action and in asserting any claim against Defendant. Therefore, there is no genuine issue of material fact as to Defendant's Sixteenth Affirmative Defense and the Court should dismiss it with prejudice.

### 16. *Defendant Has Not Stated Facts to Support that Plaintiff's Complaint and the Claims Alleged Therein are Barred by the Doctrine of Unclean Hands.*

Defendant alleges as a Nineteenth Affirmative Defense that Plaintiff's claims are barred by the doctrine of unclean hands. (Dkt # 4, ¶101.) Under California law regarding the applicability of the unclean hands defense, "[t]he focus is the equities of the relationship between the parties, and specifically whether the unclean hands affected the transaction at issue." *Jaramillo v. County of Orange*, 200 Cal.App.4th 811, 820, 133 Cal. Rptr. 3d 751 (2011). California law precludes an unclean hands affirmative defense where there is no establishment of improper conduct to begin with. *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 668 (9th Cir. Cal. 2012) (citing *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal.App.4th 970, 978, 90 Cal.

Rptr. 2d 743 (1999)) ("The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim."). Moreover, "[w]hether the doctrine of unclean hands applies is a question of fact." *Id*. "The misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice." *Id*. at 979.

Plaintiff brought this suit in good faith, has participated in discovery and has not engaged in any prior or present improper conduct. Defendant has not presented any documents or testimony to support its affirmative defense that Plaintiff's Complaint and the claims alleged therein are barred by the doctrine of unclean hands. Therefore, there is no genuine issue of material fact with respect to Defendant's Nineteenth Affirmative Defense and the Court should dismiss it with prejudice.

### 17. *Defendant Has Not Stated Facts to Support that Plaintiff's Complaint and Claims Therein Are Barred by the Doctrine of Waiver and/or Estoppel.*

Defendant alleges that Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver and/or estoppel, due to Plaintiff's statements and course of conduct." (Dkt # 4, ¶ 102.) Defendant fails to identify any statements or course of conduct which Plaintiff allegedly made which would result in a waiver or estop him from bring the claims alleged in the operative Complaint, and has produced no  documents or testimony which would suggest any basis for this defense.  Therefore, there is no genuine issue of material fact as to Defendant's Twentieth Affirmative Defense and the Court should dismiss it with prejudice.

### 18. *Defendant Not Stated Facts to Support that the After-Acquired Evidence Doctrine Bars Plaintiff's Recovery.*

Defendant alleges that "to the extent later disclosed information serves as the basis for the termination of Plaintiff's employment, Plaintiff is barred from recovery under the after-acquired

MOTION FOR SUMMARY ADJUDICATION                                        CV 12-02777 JST-JCS

evidence doctrine." (Dkt # 4, ¶ 105.) The after-acquired evidence rule serves as a complete or partial defense to an employee's claim of wrongful discharge. It comes into play when, after an employee's termination, the employer learns of the employee's wrongdoing that would have resulted in the employee's discharge in any event. *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620, 632, 41 Cal. Rptr. 2d 329 (1995).   The employer must establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it. The employer must show that such a firing would have occurred as a matter of settled company policy. *Murillo v. Rite Stuff Foods, Inc.*, 65 Cal. App. 4th 833, 845-46 (1998), *citing Waag v. Thomas Pontiac Buick, GMC, Inc.*, 930 F. Supp. 393, 408 (D. Minn. 1996).

Defendant fails to make such a showing. Defendant will allege that had it known that Plaintiff allegedly did not have a valid license during periods of his employment it would have terminated Plaintiff. However, over the past decade,  PG&E has operated under a policy whereby an employee with a suspended, revoked, or expired driving license would be accommodated with assignments that did not require driving. For example, when Plaintiff's lead supervisor Bonnett was a Substation Electrician he had an invalid drivers license for approximately 6 months and was allowed to keep his job. (Dkt # 69,  Patten Decl., ¶ 79, Ex "Y", Dkt # 69-4,  Bonnett Depo, 15:5-16:15)

The proper procedure for employees reporting that they have an invalid driver's license was allegedly communicated to them through daily tailboard meetings hosted by the Local Supervisors. (Dkt # 69,  Patten Decl., ¶ 79, Ex "Y", Dkt # 69-4,  Bonnett Depo 40:18-41:9, 47: 9-12)  As lead supervisor, Mr. Bonnett attended the daily tailboard meetings and from 2009 to 2011 and did not recall one tailboard meeting where a local supervisor reviewed the driving expectations or code of conduct with the staff. (Dkt # 69,  Patten Decl., ¶ 79, Ex "Y", Dkt # 69-4,

Bonnett Depo 44: 7-10; 44:13-45:12). Bonnett testified that the substation maintenance employees are only required to have a driver's license to drive a company vehicle, not to perform their substation maintenance duties. (Dkt # 69,  Patten Decl., ¶ 79, Ex "Y", Dkt # 69-4,  Bonnett Depo 76:19-77:5)  Plaintiff's supervisor Gankin testified that he could not remember what documents he reviewed wherein it stated that substation maintenance electricians were required to have a California license to require their job duties. (Dkt # 69,  Patten Decl., ¶ 78, Ex "X", Dkt # 69-3,  Gankin 82:20-83:1)

Ingram testified that he is aware of employees getting DUI's at PG&E, such as Chris Hackworth, and that PG&E afforded him the opportunity to get picked up from his house on a daily basis.  (Dkt # 69,  Patten Decl., ¶ 77, Ex "W", Dkt # 69-3, Plaintiff Depo., 135:9-15) "I cannot tell, inform, my employer something I'm not aware of. So the reason I didn't tell them -- I didn't tell them that my license was revoked and expired because at the time I didn't realize that it was revoked and expired. " (Dkt # 69,  Patten Decl., ¶ 77, Ex "W", Dkt # 69-3, Ingram Depo., 152:18-22)

According to an email sent by PG&E Human Resources Advisor Michelle Lee dated May 20, 2011, she could only find one example out of Fresno of employee who was terminated for driving on a suspended license.  This employee "lied to the supervisor on several occasions about his license status."  According to Lee PG&E "did terminate and EE did not grieve so no precedent setting decision on it." (Dkt # 69,  Patten Decl., ¶ 80, Ex "Z", Dkt # 90, DEF 000508) Defendant produced no documents related to the discipline of this employee, despite clear and unequivocal requests for that information. (Patten Decl., ¶4 Exhibit "D", Request No. 5).

Defendant has not presented any documents or testimony to support its affirmative defense that Plaintiff is barred from recovery under the after-acquired evidence doctrine.

MOTION FOR SUMMARY ADJUDICATION                                    CV 12-02777 JST-JCS

1    Therefore, there is no genuine issue of material fact with respect to Defendant's Twenty-Third

2    Affirmative Defense and the Court should dismiss it with prejudice.

3              **19.**    ***Defendant Has Provided No Facts to Support that Plaintiff's Complaint***

                  ***and Claims Therein are Preempted.***

4         Defendant alleges that Plaintiff's Complaint and claims are "pre-empted by the Labor

5    Management Relations Act, 29 U.S.C. § 185." (Dkt # 4, ¶ 110.) 29 U.S.C. § 185(a) states that

6    "[s]uits for violation of contracts between an employer and a labor organization representing

7    employees in an industry affecting commerce as defined in this chapter, or between any such

8    labor organizations, may be brought in any district court of the United States having jurisdiction

9    of the parties . . ." Section 301 "preempts only claims founded directly on rights created by

10   collective-bargaining agreements, and also claims substantially dependent on analysis of a

11   collective-bargaining agreement." *Cramer v. Consol. Freightways, Inc.,* 255 F.3d 683, 689 (9th

12   Cir. 2001)(en banc) (internal quotation marks omitted). A "claim is not preempted so long as it

13   may be litigated without reference to" the collective-bargaining agreement, and preemption is not

14   appropriate where the court must simply "look to" a collective-bargaining agreement "to discern

15   that none of its terms is reasonably in dispute." *Id.* at 690, 692. None of the allegations against

16   Defendant make reference to the collective bargaining agreement between Defendant PG&E and

17   Plaintiff's Union, IBEW Local 1245. Furthermore, any reference to the collective bargaining

18   agreement is simply with respect to the terms of the progressive discipline which is not in dispute

19   in this matter. This is not a matter in which the Plaintiff's claims for race discrimination,

20   harassment, retaliation and/or wrongful discharge are dependent on the analysis of a collective

21   bargaining agreement. This is evidenced by Defendant's own Motion for Summary Judgment

22   which  references the collective bargaining agreement between Defendant PG&E and IBEW

23   Local 1245 with respect to the terms of the progressive discipline, and to assert a fact that

24   Plaintiff grieved his termination. (*see* Dkt # 48, p. 3:9-10, p. 10:12-13.)

MOTION FOR SUMMARY ADJUDICATION                       CV 12-02777 JST-JCS

Defendant has not presented any documents or testimony to support its affirmative defense that Plaintiff's Complaint and claims are pre-empted by the Labor Management Relations Act, 29 U.S.C. § 185. Therefore, is no genuine issue of material fact as to Defendant's Twenty Eighth Affirmative Defense and the Court should be dismiss this affirmative defense with prejudice.

### 20.    *Defendant Has Provided No Facts that Plaintiff's Complaint and the Claims Therein are Barred by an Arbitration Agreement.*

Defendant alleges that Plaintiff's claims are barred by an agreement to arbitrate. (Dkt # 4, ¶ 111.) Defendant has not presented any documents or testimony to support its affirmative defense that an arbitration agreement exists and bars Plaintiff's Complaint and the claims therein. Therefore, the Court should dismiss Defendant's Twenty-Ninth Affirmative Defense with prejudice.

## IV.    CONCLUSION

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment as to the above referenced Affirmative Defenses. Respectfully submitted, this 27th day of September, 2013.

SMITH PATTEN


___*/s/ Dow W. Patten*___
Spencer F. Smith, Esq.
Dow W. Patten, Esq.
Attorneys for Plaintiff
STEVEN INGRAM

MOTION FOR SUMMARY ADJUDICATION                    CV 12-02777 JST-JCS