UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN INGRAM,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, et al.,<br><br>    Defendants. | Case No. 12-cv-02777-JST<br><br>**ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Re: ECF No. 74 |

    Before the Court is Plaintiff Steven Ingram's Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge, ECF No. 74, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Civil Local Rule 72-2. The Court will grant the motion.

**I.    BACKGROUND**

    **A.    Factual Allegations**

    Plaintiff filed this employment discrimination action on May 31, 2012, against Defendants Pacific Gas & Electric Company and Pacific Gas & Electric Corporation (collectively, "PG&E"). Plaintiff asserts causes of action for race discrimination, harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, wrongful termination in violation of public policy, harassment in violation of California Government Code section 12940(j), and retaliation in violation of California Government Code section 12900, *et seq*. Plaintiff, an African-American, was a Substation Maintenance Electrician at PG&E's Martin substation, one of the forty-six substations located in PG&E's regional "Area One," which encompasses a portion of Northern California from Half Moon Bay to San Francisco. He alleges he was terminated on the basis of his race by his supervisors, Boris Gankin and Ed Bonnett, after he committed a "switching error" that Plaintiff alleges is common and that would not ordinarily result in discharge.

Plaintiff alleges that PG&E did not follow its progressive discipline policy when it terminated Plaintiff rather than discipline him. Plaintiff alleges that PG&E "singled out" Plaintiff when other employees "were granted the basic rights afforded to other employees at PG&E, including the benefits of progressive discipline, for similar occurrences." Compl., ECF No. 1 ¶ 25. Plaintiff additionally alleges that his supervisors "habitually engaged in racially discriminatory practices," and that "PG&E has a history of race discrimination in the context of San Francisco substation maintenance." Compl. ¶¶ 26–27.

### B. Underlying Discovery Dispute

On August 21, 2013, the parties submitted a joint discovery letter brief outlining a discovery dispute concerning PG&E's objections and responses to Plaintiff's interrogatories, sets one and three, interrogatory numbers 4, 5, 10, and 12. ECF No. 47. The Court referred the dispute to a Magistrate Judge, who placed his rulings on the record in a discovery hearing held September 6, 2013, Hrg. Tr., ECF No. 73, and in a written memorandum memorializing his oral rulings. Order, ECF No. 71. Plaintiff moved on September 10, 2013, for relief from certain portions of the Magistrate Judge's Order. ECF No. 74. The Court ordered PG&E to respond to the motion, which is now fully briefed, and the Court thereafter took the motion under submission.[1]

Plaintiff's Interrogatory Number 4 asks: "Identify all former employees terminated by YOU due to a 'switching error.'" PG&E objected on grounds of burden, relevance, and third-party privacy. Plaintiff offered to limit the responses to employees in PG&E's Area One, but PG&E maintained its objection. The Magistrate Judge granted Plaintiff's motion to compel responses in part, as follows: "Defendants shall identify all employees terminated for, in part or in whole, a switching error, who either worked at the Martin substation or were supervised by Boris Gankin ("Gankin") or Ed Bonnett during the requested period." Order p. 1:14–16. Plaintiff

---

[1] The Court inadvertently failed to address Plaintiff's motion within the fourteen day-period contemplated by Civil Local Rule 72-2. At a case management conference held October 3, 2013, the Court advised PG&E of the error and offered PG&E the opportunity to address in writing both the merits of the motion and the question of whether the Court may consider the motion in the first instance. PG&E did not oppose the Court's consideration of the motion on its merits.

1  moves for relief from the portion of the Magistrate Judge's Order limiting the responses to Martin
2  Substation and Plaintiff's supervisors, seeking to expand the scope of discovery to the entirety of
3  Area One.
4      Plaintiff's Interrogatory Number 10 asks: "Identify all non-African-Americans employees
5  who are or have been placed on Decision Making Leave from year 2008 to the present in Area
6  One." PG&E objected on grounds of burden, relevance, and third-party privacy. The Magistrate
7  Judge granted Plaintiff's motion to compel responses in part, as follows: "Defendants shall
8  identify all non-African-American employees who are or have been placed on Decision Making
9  Leave from 2008 to present in the Martin substation." Order p. 1:18–19. Plaintiff moves for relief
10  from the portion of the Magistrate Judge's Order limiting the responses to Martin substation.
11      At the discovery hearing, Plaintiff argued to broaden the scope of the geographic area
12  covered by interrogatory numbers 4 and 10 because it is his belief that "since 2006 through 2011
13  there's only been two individuals in all of area one who have been fired for switching errors, and
14  they are both African-Americans and they both reported to Boris Gankin." Hrg. Tr. p. 5:7–10.
15  Plaintiff argued that he wants to be able to show "how rare a termination is. There's 46
16  substations. There are no other terminations. It's only Gankin terminating the African-American
17  employees that reported to him." Hrg. Tr. p. 5:17–21. The Magistrate Judge found that Plaintiff
18  had "not gotten anywhere near close to the kind of showing" Plaintiff would need to obtain "the
19  kind of sweeping evidence" Plaintiff seeks. Hrg. Tr. p. 6:5–6.
20      In addition, the Magistrate Judge observed that the interrogatories at issue are "not asking
21  for numbers," but instead ask PG&E to identify the employees at issue, which would not show
22  how rare terminations due to switching errors are. Hrg. Tr. p. 6:11. Plaintiff responded that he
23  anticipates the answer to Interrogatory Number 4 is "no one, but I can't make that argument
24  without getting the information from the defendant." Hrg. Tr. p. 6:15–16. The court observed that
25  Plaintiff failed to ask "how many" employees were terminated for switching errors or placed on
26  Decision Making Leave, and that Plaintiff had therefore failed to ask for statistical evidence. Hrg.
27  Tr. p. 6:18. Plaintiff argued that he "anticipated asking the decision-makers in this case whether
28  or not they knew about certain employees when they were making decisions about the plaintiff."

1   Hrg. Tr. p. 7:5–8.  The court asked: "Knew about certain employees that were not under their

2   supervision?"  Hrg. Tr. p. 7:9–10.  Plaintiff responded "Yes," and the court then denied the request

3   to expand the scope of the interrogatories to all of Area One.  Hrg. Tr. p. 7:11–12.

## II. LEGAL STANDARD

A district court may modify or set aside a magistrate judge's nondispositive order "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1)(A). See also Fed. R. Civ. P. 72(a); Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1414 (9th Cir. 1991).  A magistrate judge's resolution of a discovery dispute is "entitled to great deference." Doubt v. NCR Corp., No. 09-cv-5917-SBA, 2011 WL 5914284, at *2 (N.D. Cal. Nov. 28, 2011).  "A finding of fact is clearly erroneous" if the court is left with the "definite and firm conviction that a mistake has been committed." Burdick v. C.I.R., 979 F.2d 1369, 1370 (9th Cir. 1992).  "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." Conant v. McCoffey, No. 97–0139-FMS, 1998 WL 164946, *2 (N.D. Cal. Mar.16, 1998) (citing Hunt v. National Broadcasting Co., 872 F.2d 289, 292 (9th Cir. 1989)).  Mixed questions of fact and law are reviewed *de novo*. United States v. McConney, 728 F.2d 1195, 1202–03 (9th Cir. 1984) (en banc), overruled on other grounds by Estate of Merchant v. C.I.R., 947 F.2d 1390, 1392–93 (9th Cir.1991).  However, where "factual issues predominate," the "clearly erroneous" standard applies. Garvais v. United States, 421 F. App'x 769, 770 (9th Cir. 2011).

Relying on Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal. 1999), PG&E urges the Court to depart from the statutory "clearly erroneous or contrary to law" standard, and instead to apply an abuse of discretion standard because the underlying order concerns a discovery dispute centered on issues of relevance.  The Wolpin court relied on another Central District of California decision in which the court reviewed the magistrate judge's discovery order "with an eye toward the broad standard of relevance in the discovery context.  Thus, the standard of review in most instances is not the explicit statutory standard, but the clearly implicit standard of abuse of discretion." Geophysical Sys. Corp. v. Raytheon Co., Inc., 117 F.R.D. 646, 647 (C.D. Cal. 1987).

This Court declines, as others have, to apply the abuse of discretion standard because it

4

clearly conflicts with the express standard of review supplied by 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a).  See Del Campo v. Am. Corrective Counseling Servs., No. 01-cv-21151-JW, 2007 WL 470262, at *1 n. 1 (N.D. Cal. Feb. 8, 2007) ("These cases are not consistent with the statutory standard, and other district courts have accordingly declined to apply an abuse of discretion analysis."); Cent. Valley Chrysler-Jeep v. Witherspoon, No. 04-cv-6663-AWI, 2006 WL 2600149, at *2 n. 3 (E.D. Cal. Sept. 11, 2006) (same).

### III. ANALYSIS

A plaintiff alleging disparate treatment under Title VII must first establish a *prima facie* case of discrimination by offering evidence that "give[s] rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  One way to establish a *prima facie* case of discrimination is to follow the four-part test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Another way is to offer direct evidence of discrimination. Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1148 (9th Cir.1997).  In a discriminatory discharge case, like this one, the McDonnell Douglas method of establishing a *prima facie* case requires that Plaintiff show (1) that he belongs to a protected class, (2) that he was qualified for the position, (3) that he was subjected to an adverse employment action, and (4) that similarly situated individuals of other races were treated more favorably. Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 658 (9th Cir. 2002).  The threshold for establishing a *prima facie* case is "minimal." Id. at 659.

Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a "'legitimate, nondiscriminatory reason for the challenged action.'" E.E.O.C. v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123–24 (9th Cir. 2000)).  If the employer does so, the burden shifts back to the employee to show that the articulated reason is pretextual, "'either directly by persuading the [fact-finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Id. (quoting Burdine, 450 U.S. at 256).  When the plaintiff adduces direct evidence of discrimination, the Ninth Circuit requires "very little" of it to survive summary judgment; when, however, the plaintiff

5

relies on circumstantial evidence, the evidence must be "specific and substantial." Id.; Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998).

A plaintiff may also establish a *prima facie* case by marshalling statistical evidence that evinces "a clear pattern, unexplainable on grounds other than race." Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 552–53 (9th Cir. 1982) (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977)). Such cases are rare, however, because "in disparate treatment cases, the central focus is less whether a pattern of discrimination existed [at the company] and more how a particular individual was treated and why." Aragon, 292 F.3d at 663 (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 (1st Cir. 1993)). "[S]tatistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee. This is because a company's overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer when dismissing a particular individual." Id.

PG&E relies on Aragon and LeBlanc for the proposition that Plaintiff is not entitled to statistical and comparative evidence in discovery. Defendant's argument conflates the persuasive force of statistical evidence in Title VII cases – which, as set forth above, is sometimes not strong – and a party's right to *obtain* that evidence, which is adjudicated under the relevance standard set forth in Rule 26. "Statistical evidence is unquestionably relevant in a Title VII disparate treatment case." Diaz v. Am. Tel. & Tel., 752 F.2d 1356, 1362 (9th Cir. 1985). Such evidence may be helpful in establishing a plaintiff's *prima facie* case "despite the fact that [it] may not be directly probative of any of the four specific elements set forth by McDonnell Douglas." Id. (quoting Lynn v. Regents of Univ. of Cal., 656 F.2d 1337, 1342–43 (9th Cir. 1981)). "In fact, summary judgment is patently inappropriate when a plaintiff needs statistical data to substantiate the inference of discrimination and has been denied the opportunity to discover this data." Id. (citing Cedillo v. Int'l Assoc. of Bridge & Structural Iron Workers, 603 F.2d 7, 12 (7th Cir.1979)).

"A plaintiff is also entitled to use statistical evidence to show that a defendant's articulated nondiscriminatory reason for the employment decision in question is pretextual." Id. (citing

6

1    McDonnell Douglas, 411 U.S. at 804–05.  "Statistical data is relevant because it can be used to

2    establish a general discriminatory pattern in an employer's hiring or promotion practices.  Such a

3    discriminatory pattern is probative of motive and can therefore create an inference of

4    discriminatory intent with respect to the individual employment decision at issue . . . .  In some

5    cases it may be essential."  Id.  As did the Magistrate Judge, the undersigned concludes that

6    Plaintiff here is entitled to obtain statistical evidence regarding "non-African-Americans

7    employees who are or have been placed on Decision Making Leave from year 2008 to the present"

8    or "all former employees terminated by [PG&E] due to a 'switching error.'"

9    　　　　The Court also concludes, however, that the Magistrate Judge's limitation such evidence to

10   that gathered from the Martin substation was clearly erroneous, and that Plaintiff is entitled to

11   obtain evidence from the entirety of Area One.  In Sengupta v. Morrison-Knudsen Co., Inc., 804

12   F.2d 1072, 1075 (9th Cir. 1986), the plaintiff, an African-American employee who was laid off,

13   relied on statistical evidence to establish his *prima facie* case of disparate treatment.  The Ninth

14   Circuit observed that a plaintiff's "ability to prove discriminatory intent based on statistical

15   evidence depends upon selecting the proper labor pool."  Id. at 1075–76.  The issue in that case

16   was whether the appropriate pool was Department 222, the employee's particular department of

17   twenty-eight employees, or the entire "Mining Group," which consisted of 281 employees.  Four

18   of the five employees laid off in Department 222 were African-American, but in the larger Mining

19   Group, an equal proportion of minority and non-minority employees were laid off.  Id. at 1074.

20   The Ninth Circuit concluded that Department 222 was "too small," and that the proper comparator

21   unit was the entire Mining Group, because "statistical evidence derived from an extremely small

22   universe . . . has little predictive value and must be disregarded."  Id. at 1076 (quoting Morita v.

23   Southern California Permanente Medical Group, 541 F.2d 217 (9th Cir.1976), cert. denied, 429

24   U.S. 1050 (1977) (quotation marks omitted)).  "The problem with small labor pools is that slight

25   changes in the data can drastically alter appearances.  Consequently, in 1979, the EEOC concluded

26   that statistics from small applicant pools such as a pool of 30 persons are not dispositive."  Id.

27   (citing 44 Fed.Reg. 11,999 (1979)).  Though the Ninth Circuit recognized that smaller sample

28   sizes are appropriate when the employer is small, the employer in that case was "not, however, a

1  small company; nor is the Mining Group a small group. There exists no necessity to employ a
2  small group." Id. The same can be said of the labor pool at issue here.
3  From the transcript, it appears that the Magistrate Judge found that comparative evidence
4  of employees outside Martin substation who were not supervised by Plaintiff's supervisors was
5  not relevant. The Magistrate Judge asked Plaintiff whether he intended to seek information
6  concerning "certain employees that were not under their supervision." Hrg. Tr. p. 7:9–10.
7  Plaintiff responded "Yes," after which the court denied the request to expand the scope of the
8  interrogatories to all of Area One. Hrg. Tr. p. 7:11–12. The Ninth Circuit has held that it is error
9  for a trial court to impose a "same supervisor" requirement on the admissibility of statistical
10 evidence. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1115 (9th Cir. 2011); Hawn v.
11 Executive Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010). It follows that it would be error
12 to impose such a limitation on the discovery of such evidence here.
13 The Magistrate Judge also ruled that discovery into all of Area One would be unduly
14 burdensome. PG&E made no showing of burden, other than to state that 1500 employees are
15 employed in Area One. PG&E introduced no evidence showing how difficult it would be to
16 obtain the relevant information for that number of employees, and on its face the number 1500
17 does not suggest an undue burden.
18 Finally, the Court finds that Interrogatory number 4 need not have been stated in the form
19 of "how many employees" instead of "identify each employee," because Plaintiff does not seek
20 statistical evidence in the form of numbers; instead, Plaintiff seeks evidence of similarly situated
21 employees whose experiences can be compared to Plaintiff's. That information is discoverable.

**IV. CONCLUSION**

Because the Court finds that the Magistrate Judge's limitation on interrogatory numbers 4 and 10 to Martin substation and those employees supervised by Gankin and Bonnett was clearly erroneous, the Court modifies the Magistrate Judge's Order with respect to those interrogatories as follows:

1. Defendants shall identify all employees terminated for, in part or in whole, a switching error, who either worked in Area One or were supervised by Boris Gankin or Ed

Bonnett during the requested period.

2. Defendants shall identify all non-African-American employees who are or have been placed on Decision Making Leave from 2008 to the present in Area One.

**IT IS SO ORDERED.**

Dated: November 22, 2013



JON S. TIGAR
United States District Judge