UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN INGRAM,<br><br>  Plaintiff,<br><br>  v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, et al.,<br><br>  Defendants. | Case No.  12-cv-02777-JST<br><br>**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF AFFIRMATIVE DEFENSES**<br><br>Re: ECF No. 109 |

In this employment discrimination case, Plaintiff Steven Ingram moves for summary judgment with respect to several of Defendants' twenty-nine affirmative defenses. ECF No. 109. For the reasons discussed below, the Court will grant the motion in part and deny it in part.

**I.   BACKGROUND**

Plaintiff filed this employment discrimination action on May 31, 2012, against Defendants Pacific Gas & Electric Company and Pacific Gas & Electric Corporation (collectively, "PG&E"). Plaintiff asserts causes of action for race discrimination, harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, wrongful termination in violation of public policy, harassment in violation of California Government Code section 12940(j), and retaliation in violation of California Government Code section 12900, *et seq.* PG&E's Answer asserts twenty-nine affirmative defenses. Defendant has voluntarily withdrawn affirmative defenses 8–12, 16, 23, 28, and 29. Remaining at issue are affirmative defenses 1–7, 13, 15, 18, 19, and 20.

Plaintiff, an African-American, was a Substation Maintenance Electrician at PG&E's Martin substation in Northern California. He alleges he was terminated on the basis of his race by his supervisors, Boris Gankin and Ed Bonnett.

While working at PG&E, Plaintiff was involved in three "switching errors" that PG&E

1  maintains caused power outages to many PG&E customers.  Plaintiff was formally counseled or
2  disciplined for a total of eleven incidents, including the switching errors and driving-related
3  offenses.
4    In May 2011, Plaintiff's supervisor began to inquire as to the status of Plaintiff's driver's
5  license, which had expired.  PG&E suspected Plaintiff had been driving company vehicles without
6  a license.  PG&E contends Plaintiff was dishonest over the course of several weeks regarding the
7  status of his driver's license, that he drove after expressly instructed not to, and that he had been
8  driving for two years without a license, unbeknownst to PG&E.
9    On May 17, 2011, Plaintiff committed a "switching error," an electrical operation, at
10 PG&E's Golden Gate Control Center.  After the error occurred, Plaintiff attempted to fix the
11 problem, which PG&E contends was against company policy.  Plaintiff's attempted fix caused a
12 power arc that injured Plaintiff's eyes, and, PG&E maintains, damaged PG&E equipment and
13 caused a power outage to 6,134 customers.
14   PG&E placed Plaintiff on "crisis suspension" on May 19, 2011.  He was terminated on
15 June 29, 2011.  PG&E cited Plaintiff's failure to tell PG&E about his suspended driver's license
16 and the switching error as the causes of his termination.

## II. LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  The Court must draw all reasonable inferences in the light most favorable to the non-moving party.  Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010).  However, unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment.  Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

When the moving party does not bear the ultimate burden of persuasion at trial, it must

satisfy both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990)). If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. Id. at 1102–03.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Affidavits and declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. OBJECTIONS TO EVIDENCE

PG&E objects to paragraphs 3-8, 10-35, 38-43, 46, 47, 62, 68, 69, 73, 76 and 80 of the Declaration of Dow Patten in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, ECF No. 69, on which Plaintiff also relies in support of the present motion. All of the paragraphs except paragraph 80 relate to the parties' discovery disputes and are irrelevant to the decision on this motion; the objections to those paragraphs are overruled as moot.[1]

PG&E objects to paragraphs 74 and 75 of the Patten declaration as "purely legal argument

---

[1] The Court addresses PG&E's objection to paragraph 80 below.

3

and legal conclusions." The paragraphs in question state the legal standard for requesting a continuance of the hearing of a summary judgment motion under Federal Rule of Civil Procedure 56(d). They appear to state the standard correctly but, more to the point, they are not relevant here, because no party requests a continuance of the hearing on this motion. Lastly, and mostly importantly, *Plaintiffs never cited these paragraphs in the current motion*. The objection is not well taken, and is overruled.

PG&E objects to Plaintiff's reliance on Exhibit Z to the Declaration of Dow Patten in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, ECF No. 69, as unauthenticated, inadmissible hearsay, and to paragraph 80 of his declaration, which offers Exhibit Z in evidence. Exhibit Z is unnecessary to the resolution of the instant motion, and the objections are therefore overruled as moot.

PG&E moves to strike the Declaration of Dow Patten in support of the instant motion, ECF No. 109-1, because it purports to attach four exhibits that were not attached to the declaration, even though PG&E knows to which exhibits the motion refers and it possesses each of them. The exhibits were filed with Plaintiff's reply. PG&E's objections are overruled.

## IV.   ANALYSIS

### A.   Affirmative Defense No. 1: Failure to State a Claim Upon Which Relief May be Granted

Plaintiff moves for summary judgment with respect to PG&E's first affirmative defense for failure to state a claim upon which relief may be granted because "failure to state a claim" is not properly characterized as an affirmative defense.

Rule 8(c) affirmative defenses are distinct from Rule 8(b) "denials or negative defenses that directly contradict elements of the plaintiff's claim for relief." Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1270 (3d ed.). "A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) (citing In re Rawson Food Service, Inc., 846 F.2d 1343, 1349 n.9 (11th Cir.1988) (failure to state a claim "is not an affirmative defense but rather is a general defense akin to a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted.")); see also

1  Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1174 (N.D.
2  Cal. 2010) ("To the extent that the [defendant] restates negative defenses that exist in other parts
3  of the complaint, those defenses are redundant pursuant to Rule 12(f) and should be struck so as to
4  simplify and streamline the litigation."). But see Valley Cmty. Bank v. Progressive Cas. Ins. Co.,
5  No. 11-cv-00574-JF, 2011 WL 1833116, at *3 (N.D. Cal. May 13, 2011) (denying motion to
6  strike "failure to state a claim" affirmative defense).

Defendant is correct that Rule 12(h)(2)(C) permits a defendant to raise the defense of "failure to state a claim upon which relief can be granted" at trial. But that defense remains a denial — or negative defense — not an affirmative defense.

Consequently, the proper course is to strike the affirmative defense as improper pursuant to Rule 12(f). Nothing in this Order, however, affects PG&E's Rule 12 right to assert that Plaintiff fails to state a claim; that question is not currently before the Court.[2]

### B. Affirmative Defense No. 2: Contributory Negligence

Although Plaintiff does not assert a claim for negligence, PG&E's second affirmative defense asserts "that any damages sustained by Plaintiff were either wholly or in part negligently caused by Plaintiff's own actions, inactions, or delay in acting, and said negligence comparatively reduces the percentage of negligence, if any, by Defendants." Answer ¶ 84. Plaintiff moves for summary judgment on the grounds that the affirmative defense does not apply.

In its opposition brief, PG&E recasts its affirmative defense as follows: "In their Second Affirmative Defense, Defendants assert that any damages sustained by Plaintiff were caused by Plaintiff's own actions." Opp. at 18. PG&E argues that Plaintiff's failure to abide by PG&E policies resulted in his termination. That argument mischaracterizes the affirmative defense, which clearly asserts contributory or comparative negligence. PG&E does not point to any authority, nor is the Court aware of any, for the proposition that contributory or comparative

---

[2] In his reply brief, Plaintiff addresses the question of whether Plaintiff has, in fact, adequately stated a claim for relief, apparently in response to the arguments in PG&E's opposition brief that Plaintiff has failed to make out a *prima facie* case of discrimination. That question is not before the Court on this motion.

negligence applies in the employment discrimination context in the absence of a negligence claim.

The Court GRANTS summary judgment for Plaintiff on PG&E's second affirmative defense.

### C. Affirmative Defenses Nos. 3, 6, 7, and 15: Exhaustion of Administrative Remedies and Statute of Limitations

PG&E's third, sixth, and seventh affirmative defenses assert that Plaintiff failed to exhaust his administrative remedies prior to filing suit. PG&E's fifteenth affirmative defense asserts that this action is barred by state and federal statutes of limitations. Plaintiff moves for summary judgment on the basis of right-to-sue notices issued by the California Department of Fair Employment and Housing and the Equal Employment Opportunity Commission.

PG&E does not dispute that Plaintiff exhausted his administrative remedies with respect to the claims arising out of his discharge; nor does PG&E dispute that Plaintiff's claims arising out of his discharge are not barred by the statute of limitations. Consequently, PG&E has failed to support its third, sixth, seventh, and fifteenth affirmative defenses, at least with respect to Plaintiff's claims arising out of his termination.

However, PG&E points to two paragraphs in the complaint that PG&E argues assert claims arising out of other allegedly discriminatory practices that occurred prior to the applicable limitations period. Paragraph 12 alleges: "From 2005 through early 2007, PG&E assigned work crews to the Jefferson Substation and to the Martin Substation in order to undertake a major project connecting the two substations. The Jefferson Substation crew was primarily composed of minority workers." Compl., ECF No. 1 ¶ 12. Paragraph 13 alleges: "Plaintiff was assigned to the Jefferson Substation crew, the one composed mainly of minority workers. PG&E required Plaintiff and the rest of his crew to work twelve-hour days, sometimes for six to seven consecutive days." Compl. ¶ 13.

These arguments miss the point of the affirmative defense and of Plaintiff's motion. The discrimination claims in Plaintiff's complaint are timely, whether the allegations set forth in paragraphs 12 and 13 of the complaint are included or not. Plaintiff has not brought a separate

claim or claims relating to those allegations.[3]  Plaintiff is therefore entitled to summary judgment on this affirmative defense.

The Court GRANTS summary judgment for Plaintiff on PG&E's third, sixth, seventh, and fifteenth affirmative defenses.

### D. Affirmative Defense No. 4: Lack of Knowledge

PG&E's fourth affirmative defense asserts that PG&E "had no knowledge of any alleged discrimination, harassment and/or retaliation."  Answer ¶ 86.  Plaintiff moves for summary judgment on the grounds that PG&E knew of the alleged discrimination because PG&E produced an e-mail in which Plaintiff's supervisor told another employee that Plaintiff had challenged the investigation into his driver's license as "discrimination."  PG&E argues that a genuine issue of material fact remains as to what PG&E knew, and when.

The difficulty with this portion of the motion, and with PG&E's answer, is that neither party explains why "lack of knowledge" actually is an affirmative defense here, and PG&E cites no authority for the proposition that it is one.  Under Title VII, when a supervisor engages in activity that results in an adverse tangible employment action against the employee, the employer is vicariously liable for the supervisor-employee's actions.  Nichols v. Azteca Rest. Enterprises, Inc., 256 F.3d 864, 877 (9th Cir. 2001); El-Hakem v. BJY Inc., 262 F. Supp. 2d 1139, 1147–48 (D. Or. 2003), aff'd, 415 F.3d 1068 (9th Cir. 2005); 45C Am. Jur. 2d Job Discrimination § 2152 (2013).[4]

Plaintiff's motion for summary judgment is therefore GRANTED with respect to PG&E's fourth affirmative defense.

---

[3] Whether evidence of the allegations is admissible at trial is a separate question that is not before the Court.

[4] There are situations in which a defendant's lack of knowledge is an affirmative defense.  See, e.g., People v. Salas, 37 Cal. 4th 967, 982, 127 P.3d 40, 49 (2006) (lack of knowledge that a security is not exempt is an affirmative defense to the crime of selling unregistered securities); Kelly v. McKee & Associates Inv. Real Estate, Inc., 928 F.2d 1137 (9th Cir. 1991) (same) (applying Oregon law).  This just doesn't appear to be one of them.

### E. Affirmative Defense Nos. 5, 18: "Reasonable Steps" or "Reasonable Care" to Prevent and/or Promptly Correct Wrongful Conduct

PG&E's fifth affirmative defense asserts that "all reasonable steps to prevent discrimination, harassment, and retaliation were taken." Answer ¶ 87. PG&E's eighteenth affirmative defense states: "Defendants assert that it [sic] reasonable care to prevent and/or promptly correct the alleged wrongful conduct was exercised[sic]." Answer ¶ 100. Plaintiff moves for summary judgment with respect to both affirmative defenses.[5]

The parties agree that PG&E may raise an affirmative defense to liability for harassment if (1) "the employer exercised reasonable care to prevent and correct promptly" the wrongful conduct, and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). Plaintiff argues summary judgment is appropriate because "the evidence borne out in discovery in this matter shows no investigation of any kind into Plaintiff's claim of discrimination, let alone any steps to correct or remedy the discriminatory and harassing conduct of defendant." Mot. at 11.

PG&E responds that its anti-harassment policies and complaint procedures constitute "reasonable care," and that Plaintiff admitted at his deposition that he was aware of the policies, but failed to take advantage of the complaint procedures available to him.

There is a genuine dispute of material fact regarding these defenses. Plaintiff's motion for summary judgment with respect to PG&E's fifth and eighteenth affirmative defenses is DENIED.

### F. Affirmative Defense No. 13: Mitigation

PG&E's thirteenth affirmative defense asserts "that Plaintiff failed to mitigate his alleged damages and said failure to mitigate bars Plaintiff from recovery in this action." Answer ¶ 95.

Should an employee succeed on an employment discrimination claim, employers bear the

---

[5] PG&E also argues, incorrectly, that the Court must deny the motion with respect to the eighteenth affirmative defense because — according to PG&E — Plaintiff's motion does not discuss it. In fact, Plaintiff's motion discusses the fifth and eighteenth affirmative defenses together. Mot. at 10–11. Because the defenses are duplicative, the Court will consider PG&E's response concerning the fifth affirmative defense as though also made with regard to the eighteenth.

burden of establishing a mitigation affirmative defense by a preponderance of the evidence. The employer must establish that (1) "there were substantially equivalent jobs available, which [the employee] could have obtained," and (2) that the employee "failed to use reasonable diligence in seeking one." E.E.O.C. v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994) (citing Sias v. City Demonstration Agency, 588 F.2d 692, 696 (9th Cir. 1978)). The effect of an employee's failure to mitigate damages is a reduction in back pay or front pay damages. Id.

"Substantially equivalent" employment is "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." Sellers v. Delgado Cmty. Coll., 839 F.2d 1132, 1138 (5th Cir. 1988). However, the employee "need not go into another line of work, accept a demotion, or take a demeaning position." Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 231 (1982). Moreover, "[a] discharged worker is not held to the highest standard of diligence in his or her efforts to secure comparable employment; 'reasonable' exertions are sufficient." N.L.R.B. v. Mercy Peninsula Ambulance Serv., Inc., 589 F.2d 1014, 1018 (9th Cir. 1979).

After PG&E terminated Plaintiff's employment, on June 29, 2011, Plaintiff began to look for work at other utilities, including the Sacramento Municipal Utility District, Bay Area Rapid Transit, and Southern California Edison. Ingram Dep. 24:1–25. Plaintiff testified that he looked for work at "[b]asically any place that was a utility." Ingram Dep. 24:12. In November 2011, Plaintiff applied for a job at IAP World Services, at Moffett Field. Ingram Dep. 23:17. He started working at IAP in December 2011, and still works there now. The parties agree that Plaintiff earned $43.20 per hour at PG&E, but now earns $39 per hour as a high voltage electrician at IAP.[6] After he was hired by IAP, Plaintiff disposed of his job search materials. Ingram Dep. 39:1–16.

Plaintiff argues that PG&E has failed to produce any evidence to support its mitigation

---

[6] Plaintiff failed to attach the exhibits discussed in the Patten Declaration in support of this motion, ECF No. 109-1, including the portions of Plaintiff's deposition relevant here. After PG&E pointed out the error, Plaintiff filed the exhibits, but again failed to file certain portions of the deposition relevant to the mitigation defense; in particular: pages 20, 21, and 22. Nevertheless, as the parties agree on these facts, the Court considers them undisputed for purposes of this motion.

defense. In support of his motion for summary judgment, Plaintiff states that he pursued substantially equivalent work, and that he was hired in a substantially equivalent position six months after his discharge. PG&E argues only that "Plaintiff has not provided any evidence of the extent of his job search and admits that he does not have records of his job search. Nor has Plaintiff presented any evidence showing any effort to bridge" the wage difference between his PG&E job and his new job. Opp. at 22.

The burden of establishing PG&E's affirmative defense falls on PG&E, not Plaintiff. It is PG&E that must adduce evidence of the availability of "substantially equivalent" jobs that the employee "could have obtained," and evidence that the employee "failed to use reasonable diligence in seeking one." A failure to present any evidence of substantially equivalent jobs is fatal to the mitigation defense. See Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995) (employer failed to carry burden where it "presented no evidence as to the availability of comparable employment"). Indeed, "reliance on [an employee's] testimony about her prior efforts [to find a job], without more, is insufficient to show the availability of substantially equivalent jobs." E.E.O.C. v. Abercrombie & Fitch Stores, Inc., No. 10-cv-03911-EJD, 2013 WL 1435290, at *13 (N.D. Cal. Apr. 9, 2013).

Here, the Court finds that PG&E has raised a genuine issue of material fact with respect to the reasonableness of Plaintiff's job search. However, PG&E has presented no evidence concerning the availability of substantially equivalent jobs. The Court therefore GRANTS summary judgment in Plaintiff's favor with respect to PG&E's thirteenth affirmative defense.

**G.    Affirmative Defense No. 19: Unclean Hands**

PG&E's nineteenth affirmative defense asserts that each of Plaintiff's claims are barred by the doctrine of unclean hands. Answer ¶ 101.

The doctrine of unclean hands requires that those seeking the Court's protection "have acted fairly and without fraud or deceit as to the controversy in issue." Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985). "What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant." Republic Molding Corp. v.

10

1  B. W. Photo Utilities, 319 F.2d 347, 349 (9th Cir. 1963).  In California, the doctrine applies to

2  both legal and equitable remedies in contract and tort actions.  Camp v. Jeffer, Mangels, Butler, &

3  Marmaro, 35 Cal. App. 4th 620, 638 (1995).  For example, an employee has no recourse for

4  wrongful termination of employment if the employee falsely represented that he possessed the

5  pertinent qualifications in order initially to obtain the employment.  Id.

6        The unclean hands doctrine may also apply in the federal employment context.  In

7  McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 360–63 (1995), the Supreme Court

8  considered an employer's assertion of the unclean hands doctrine where the employee alleged a

9  violation of the Age Discrimination in Employment Act.  The employer discovered evidence of

10 misconduct after the suit was filed.  Focusing on "the duality between the legitimate interests of

11 the employer and the important claims of the employee who invokes the national employment

12 policy mandated by the Act," the Court held that an "employee's wrongdoing must be taken into

13 account . . . lest the employer's legitimate concerns be ignored."  The unclean hands rule based on

14 "after-acquired evidence" developed by the McKennon Court recognizes that "[i]t would be both

15 inequitable and pointless to order the reinstatement of someone the employer would have

16 terminated, and will terminate, in any event and upon lawful grounds."  Id. at 362.  See Rivera v.

17 NIBCO, Inc., 364 F.3d 1057, 1071 (9th Cir. 2004) (discussing "after-acquired evidence" rule).

18       Nevertheless, the McKennon Court declined to apply the unclean hands doctrine as a

19 complete bar, holding instead that only the remedy for employment discrimination must account,

20 should the doctrine apply, for the inequitable conduct.  In that case, the Court held that front pay

21 and reinstatement were inappropriate.  When and how the doctrine applies the Court left to "the

22 ordinary course of further decisions, for the factual permutations and the equitable considerations

23 they raise will vary from case to case."  McKennon, 513 U.S. at 361.

24       PG&E relies on McKennon, and argues that Plaintiff "dirtied" his hands by engaging in the

25 conduct for which PG&E terminated him.  In particular, PG&E argues that Plaintiff hid his

26 misconduct by lying to his supervisor when asked to present his driver's license, driving company

27 vehicles without authorization, and concealing his switching error on May 17, 2011 by attempting

28 to fix it without authorization.

The defense is inappropriately asserted. Though the unclean hands defense, or after-acquired evidence rule, complements the requirement in mixed motive discrimination cases that employers show the employee was discharged for non-discriminatory reasons, it applies to the wholly distinct situation where the employer learns of misconduct subsequent to discharge. See, e.g., O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 759 (9th Cir. 1996) ("[T]he employer must establish not only that it could have fired an employee for the later-discovered misconduct, but that it would in fact have done so."). PG&E does not cite to any authority for the application of the unclean hands doctrine to alleged misconduct of which the employer was aware prior to termination. Absent evidence that Plaintiff acted with fraud or deceit, and that the fraud or deceit *gave rise to the right asserted*, PG&E cannot carry its burden.

Unlike McKennon and its progeny, there is no "after-acquired" evidence at issue in this case; PG&E's unclean hands defense is a restatement of its general defense that Plaintiff was discharged for non-discriminatory reasons.[7] PG&E has voluntarily withdrawn that defense in response to Plaintiff's motion. Though Plaintiff's alleged misconduct may be relevant to PG&E's defenses, it does not satisfy the elements of the unclean hands defense because, at the time Plaintiff acquired the right he now asserts, PG&E was aware of the conduct; indeed, the conduct was cited as the reason for Plaintiff's termination.

The Court therefore GRANTS summary judgment in Plaintiff's favor with respect to PG&E's nineteenth affirmative defense.[8]

### H.   Affirmative Defense No. 20: Waiver and/or Estoppel

PG&E's twentieth affirmative defense asserts "that the Complaint and Claim therein are barred, in whole or in part, by the doctrine of waiver and/or estoppel, due to Plaintiff's statements and course of conduct." Answer ¶ 102. Plaintiff moves for summary judgment on the basis of a lack of evidence regarding the twentieth affirmative defense.

PG&E argues that Plaintiff admitted to PG&E that he engaged in conduct that violated

---

[7] Indeed, PG&E asserted a separate "after-acquired evidence" affirmative defense. Answer ¶ 105.

[8] This Order expresses no view on whether PG&E has an adequate defense to Plaintiff's claims based on Plaintiff's alleged misconduct.

PG&E's "Rules to Live By," meriting discharge. PG&E contends that Plaintiff's admissions constitute waiver and estoppel. While those facts may be in dispute, they have no bearing on PG&E's waiver or estoppel defenses.

In order to establish waiver, PG&E must show that Plaintiff's conduct constitutes "intentional relinquishment of a known right after knowledge of the facts." Opp. at 23–24 (quoting United States v. Perez, 116 F.3d 840, 845 (9th Cir. 1997)). Nothing in the record suggests that Plaintiff intentionally relinquished his right to file suit against PG&E for employment discrimination.

With respect to estoppel, PG&E must establish that it justifiably relied to its detriment on Plaintiff's misconduct. Carrillo v. United States, 5 F.3d 1302, 1306 (9th Cir. 1993) ("An essential element of any estoppel claim is that the party asserting the estoppel must rely to its detriment on the misrepresentation or concealment."). PG&E makes no attempt to explain how Plaintiff's conduct caused it justifiably to rely, to its detriment, in discharging Plaintiff. Nor does PG&E point to any misrepresentation or concealment unknown to PG&E at the time of discharge.

More importantly, it does not appear that waiver and estoppel are even available to PG&E as affirmative defenses in this Title VII case. PG&E argues that they are, relying on Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). But the Zipes Court's holding is wholly unrelated to PG&E's affirmative defenses. There, the Supreme Court held "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Id. Waiver and estoppel are therefore defenses available to an employment discrimination *plaintiff* contending that Title VII's requirement to exhaust administrative remedies was waived by the employer. Nothing in Zipes supports PG&E's position or provides the legal standard applicable to PG&E's affirmative defense.

The basis of PG&E's waiver and estoppel defenses eludes the Court. Plaintiff's motion for summary judgment with respect to PG&E's twentieth affirmative defense is hereby GRANTED.

## V. CONCLUSION

For the foregoing reasons, the Court hereby:

1. STRIKES PG&E's first affirmative defense;

2. GRANTS summary judgment in Plaintiff's favor with respect to PG&E's second, third, fourth, sixth, seventh, thirteenth, fifteenth, nineteenth, and twentieth affirmative defenses; and

3. DENIES Plaintiff's motion for summary judgment with respect to PG&E's fifth and eighteenth affirmative defenses.

**IT IS SO ORDERED.**

Dated: January 27, 2014



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

14